IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CT-3108-BO

FILED
JUN 0 7 2010
DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

| | |
|---|---|
| JAMES LEWIS SANFORD, )<br>        Plaintiff, )<br>)<br>v. )<br>)<br>RAYMOND RIVERA, et al., )<br>        Defendants. ) | **ORDER** |

James Lewis Sanford ("plaintiff" or "Sanford") filed this action pursuant to 42 U.S.C. § 1983. Sanford is currently incarcerated within the North Carolina Department of Correction in the Pasquotank Correctional Institution. The allegations arise from incidents occurring while housed at the Wake County Jail. He alleges defendants' violated his rights under the United States Constitution through his classification as a Bloods gang member, the confiscation and censoring of his mail, and monitoring of his telephone calls. Defendants' have filed a motion for summary judgment. Named as defendants are Lieutenant Raymond Rivera, Frank Gunter, Vivian Scott, Michael Ledford, and William Burt. Each defendant is employed by the Sheriff of Wake County. While plaintiff was given an extension of time to respond to the motion for summary judgment, the time to do so has run, without response.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Ander-

son, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A mere scintilla of evidence supporting the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. Matsushita Elec. Indus. Co., 475 U.S. at 586-87.

The officers assert qualified immunity. Government officials are entitled to qualified immunity from civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The Fourth Circuit has recognized a two-pronged qualified immunity inquiry. First, the court must "decide whether a constitutional right would have been violated on the facts alleged." Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003). Second, assuming the right is violated, "courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." Id. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808 (2009). A court has discretion to decide which step in the two-prong test to analyze first. Pearson, 129 S. Ct. at 821.

> Because "[q]ualified immunity is an entitlement not to stand trial or face the other burdens of litigation ... rather than a mere defense to liability," it is

2

important to "resolv[e] immunity questions at the earliest possible stage in litigation." Ordinarily, this would be at the summary judgment stage. However, qualified immunity does not "override the ordinary rules applicable to summary judgment proceedings." "[T]he purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' " but "a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred ... must be reserved for trial.' "

Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006) (citations omitted).

The court first reviews the claim of classification. A prisoner has no constitutional right from custody classification. See Sandin v. Connor, 515 U.S. 472, 485-86 (1995); Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999); See O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991). However, inmates have a constitutional right to be protected against an extensive risk of violence and assault by other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994). Likewise, "[d]ue process requires that a pretrial detainee not be punished." Bell v. Wolfish, 441 U.S. 520, 535 (1979). However, "detainees may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others." Allen v.. Illinois, 478 U.S. 364, 373-74 (1986).

The classification of plaintiff was based on the accepted criteria for classifying inmates in the jail as set out in Rules and Laws Governing the Operations, Surveillance and Monitoring of Jail Faciilities developed by the North Carolina Department of Human Resources. 10 NCAC 14J.0301 ("Each jail shall have a written classification procedure for the placement and housing of inmates within the limitations imposed by the design and capacity of the jail. The procedures shall assign inmates to confinement units that best meet their individual needs and that reasonably protect the inmate, other inmates, and the jail staff."). Plaintiff's identification as a Bloods gang member was made to ensure the safety of plaintiff, other inmates, and the detention staff.

3

staff. (Aff. Moore, Riveria) While plaintiff appears to argue it was the classification which caused him to be "jumped," plaintiff fails to support the claim with any evidence. Furthermore, the summary judgment materials filed by defendants state it was plaintiff's behavior which led to the physical altercation, despite the efforts of the correctional officers. (Id.) Plaintiff does not respond to the summary judgment. There is nothing within the record to show defendants intentionally or knowingly positioned plaintiff in a situation of risk. Defendants are cloaked with qualified immune.

Secondly, the court shall review the mail monitoring claim. While prisoners and detainees have some First Amendment rights in both receiving and sending mail, it is clear that prison officials may place reasonable restrictions on these rights. See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989); Pell v. Procunier, 417 U.S. 817, 822 (1974); Bell v. Wolfish, 441 U.S. 520, 544-52 (1979). In order to maintain prison security and to check for contraband, prison officials may, pursuant to a uniform and evenly- applied policy, open an inmate's incoming mail. See Wolff v. McDonnell, 418 U.S. 539, 574 -77 (1974); Bumgarner v. Bloodworth, 768 F.2d 297, 301 (8th Cir.1985) (per curiam). Detention officers may also open and read outgoing general mail. Rodriquez v. James, 823 F.2d 8, 11-13 (2nd Cir. 1987); United States v. Felipe, 148 F.3d 101 (2nd Cir. 1998). Similarly, the detention officers may regulate inmate to inmate correspondence. Turner v. Safley, 482 U.S. 78, 91-92 (1987); Vestser v. Rogers, 795 F.2d 1179, 1180-84 (4th Cir. 1986).

Under these standards, the allegations fail to state a constitutional claim. Plaintiff's allegations focus on a letter sent by plaintiff to another outside the jail. The letter was given to the district attorney and is now part of a criminal file. He argues reading his outgoing mail (it

4

appears to be this one letter) is illegal and "[d]efendant had no right to search, seizure or censor plaintiff mail." However, when plaintiff was received at the jail, plaintiff was advised of the mail policy in the Wake County Detention Center inmate handbook. (Aff. Moore and Rivera) Plaintiff had no constitutionally protected right to send unmonitored letters to another from jail. No evidence appears which suggests defendants were doing anything but implementing the policy of which plaintiff was aware. Defendants are shielded by qualified immunity.

Lastly, the court shall review the telephone monitoring issue. Pre-trial detainees do not have a constitutional right to unlimited telephone privileges. State Bank of St. Charles v. Camic, 712, 712 F.2d 1140, 1145 n. 2 (7th Cir. 1983). "Any expectation of privacy in outbound calls from prison is not objectively reasonable and the Fourth Amendment is therefore not triggered by the routine taping of such calls." United States v. Monghur, 588 F.3d 975, 979 (9th Cir. 2009) (quoting United States v. Van Poyck, 77 F.3d 285, 291 (9th Cir. 1996) (acknowledging that this analysis does not apply to properly placed telephone calls between a defendant and his attorney)), see also United States v. Gangi, 57 Fed. Appx. 809, 815 (10th Cir. 2003) (unpublished).

Like the mail policy, inmates are advised that all telephone calls are subject to be "monitored and recorded" and any use of the telephone will signify implied consent for the call to be monitored and recorded. (Aff. Moore, Riveria) The one exception to this rule is that a call to an attorney's office is not monitored. (Id.) Plaintiff does not allege he was unable to use the telephone, but that it was monitored. He does not argue any monitored call was to his attorney. Before the court is the policy regarding monitoring. Plaintiff was on notice, there is no indication of any behavior other than that implementing and following the policy by defendants. Again, plaintiff does not respond to the motion for summary judgment and defend his complaint. Thus, defendants are cloaked with qualified immunity.

5

For the reasons set out above, defendants' motion for summary judgment is GRANTED. Having so determined all other pending motions are DENIED as MOOT. The case is CLOSED.

SO ORDERED. This the 4 day of June 2010.

*Terrence Boyle*
TERRENCE W. BOYLE
United States District Judge